# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARY G. BELOUR, | ) |
| Plaintiff, | ) |
| | ) No. 05 C 5631 |
| v. | ) |
| | ) Judge Ruben Castillo |
| ADAPT OF ILLINOIS, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mary G. Belour ("Belour") sued her employer, Adapt of Illinois Inc. ("Adapt"), alleging that her termination was racially motivated, and therefore in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, and 42 U.S.C. § 1981. Adapt's motion for summary judgment pursuant to Fed. R. Civ. P. 56(c) is presently before the Court. For the reasons set forth below, Adapt's motion is denied.

## RELEVANT FACTS[1]

### I. Adapt's Employment and Attendance Policies

Adapt provides psychiatric rehabilitation services to adults with mental illnesses who reside in six Illinois nursing homes ("sites"), including Sheridan Shores Care and Rehabilitation Center in Chicago. (R. 42, Pl.'s Resp. to Def.'s Facts ¶ 2.) While Adapt's employees work in the nursing homes, Adapt does not own or operate the nursing homes. (*Id.* ¶ 3.)

Adapt conducts written employee performance evaluations by assigning numerical ratings indicating whether an employee needs improvement (1-2 rating), meets expectations (3-4 rating), or exceeds expectations (5 rating) for each job responsibility.

---

[1] These facts are derived from the parties' statements of facts filed pursuant to Local Rule 56.1(b). Unless otherwise indicated, the facts included herein are undisputed.

(*Id.* ¶ 7.) Belour disputes the objectiveness with which Adapt managers assign these ratings. (*Id.*) Adapt admits it has no objective definition of "excessive tardiness." (R. 43, Def.'s Resp. to Pl.'s Facts ¶ 4.) On its performance evaluations, Adapt considers every section equally important. (*Id.* ¶ 6.) However, Adapt does not use the numerical ratings to calculate an overall performance rating. (R. 42, Pl.'s Resp. to Def.'s Facts ¶ 8.) Additionally, Adapt disciplines employees without regard to length of employment, and employees are given multiple opportunities to correct their behavior. (R. 43, Def.'s Resp. to Pl.'s Facts ¶¶ 7, 11.)

Adapt's Mental Health Professional ("MHP") job description requires employees to work "as scheduled with rare absences and tardiness." (*Id.* ¶ 6.) Adapt MHPs are also subject to Adapt's Personnel Policies and Procedures Manual, which contains certain punctuality and disciplinary policies. Adapt's Attendance Punctuality policy states that:

> Adapt expects employees to be reliable and punctual in reporting for scheduled work. Regular attendance is crucial to meeting the needs of consumers in Adapt's programs. Employees are expected to report to their work location and be ready to start working at the assigned starting time and work until the assigned quitting time.

(*Id.* ¶ 12.) Adapt's Employee Conduct & Disciplinary Action policy states that excessive tardiness is misconduct that may warrant either termination, suspension, or written reprimand. (*Id.* ¶ 13.)

On June 13, 2004, Adapt implemented Automatic Data Processing, Inc.'s ("ADP's") ezLaborManager, a web-based employee attendance tracking system, which automated employee reporting of time and attendance at all of Adapt's sites. (*Id.* ¶ 9.) ADP provided an online training course to Adapt's employees on the use of ezLaborManager. (*Id.*) Since the system was new, Adapt stated that it did not discipline

employees who clocked in after their scheduled start times between June 13, 2004 and June 30, 2004. (*Id.* ¶ 15.) As of July 1, 2004, Adapt employees clocking in eight or more minutes late were "officially" tardy and were subject to disciplinary action. (*Id.* ¶ 17.)

On September 13, 2004, Fruscione sent a memo to all Adapt staff reminding employees to arrive on time for their work shifts. (*Id.* ¶ 18.) The memo instructed employees that excessive tardiness could result in disciplinary action, including termination. (*Id.*) Each employee, including Belour, signed the memo. (*Id.* ¶ 19.)

The parties dispute whether the eight minute actionable tardy rule was an Adapt created policy, or was just a function of ezLaborManager's quarter-hour increment time-tracking system. (*Id.* ¶ 17.) Adapt's own supervisors considered an employee late if they arrived to their scheduled shift even one minute late. (*Id.*)

## II. Belour's Employment at Adapt

Belour is an African American woman who worked as a MHP at Adapt's Sheridan Shores site from June 21, 2004 until March 21, 2005. (R. 42, Pl.'s Resp. to Def.'s Facts ¶ 1.) Adapt contends it discharged Belour for "excessive tardiness." (*Id.*) Belour maintains that Adapt's stated reason for her discharge is a pretext for discrimination. (*Id.*)

Adapt Program Director, Yvette Fruscione ("Fruscione"), supervised Belour throughout her employment at Adapt. (*Id.* ¶ 23.) Adapt contends that Fruscione met with Belour during the week of July 18, 2004, at which time Fruscione gave Belour a verbal warning concerning the number of times Belour arrived late to work. (*Id.* ¶ 24.) Adapt further states that at a September 22, 2004 follow-up meeting, Fruscione told

3

Belour that she showed improvement in reporting to work on time since the July 18 meeting. (*Id.* ¶ 26.) Fruscione encouraged Belour to continue reporting to work on time because excessive tardiness would result in disciplinary action. (*Id.*) Belour only recalls meeting with Fruscione once to discuss her tardiness problem. (*Id.* ¶¶ 24, 26.)

On December 21, 2004, Fruscione met with Belour to discuss Belour's initial six month performance evaluation covering the period June 21, 2004 through December 21, 2004. (*Id.* ¶ 29.) Belour received a rating of "2" (needs improvement) on working "as scheduled with rare absences and tardiness." (*Id.*) Despite Adapt's stated policy of not punishing employees who clocked in after their scheduled start times between June 13, 2004 and June 30, 2004, Belour's December 21, 2004 performance evaluation referenced two instances Belour was tardy during this period. (*Id.* ¶¶ 15, 32.)

The fourth goal on Belour's December 21, 2004 performance evaluation stated that Belour "will make apparent efforts to show improvement to arrive at the worksite and start work at the assigned starting time for each day worked." (*Id.* ¶ 33.) Following this evaluation, Belour was placed on probation for ninety days. (*Id.* ¶¶ 34, 35.) The parties dispute whether the purpose of this probationary period was to give Belour an opportunity to meet her performance goals, or whether probation was a form of discipline not administered to similarly situated white employees. (*Id.* ¶ 34.)

During her ninety-day probationary period, Belour was eight or more minutes late to work on at least five occasions. (*Id.* ¶ 35.) On March 21, 2005, Fruscione met with Belour to discuss her ninety-day extended probationary performance evaluation. (*Id.* ¶ 36.) Belour received a rating of "1" (needs improvement) with respect to the job responsibility of "works as scheduled with rare absences and tardiness." (*Id.*)

Fruscione's comments on the evaluation stated that Belour had not shown improvement in arriving to work on time and as scheduled. (*Id.*) For that reason, Adapt terminated Belour at the conclusion of this meeting. (R. 22, Def.'s Answer ¶ 22.) Throughout her employment, Adapt only disciplined Belour for her tardiness, and Belour otherwise met the expectations of Adapt in all other areas. (R. 43, Def.'s Resp. to Pl.'s Facts ¶ 12.)

### III. Adapt's Non-African American Employees

Belour identified non-African American employees Maria Forliano ("Forliano"), Paul Pacilio ("Pacilio"), Peg Paugh ("Paugh"), and Nicole Bertagna ("Bertagna") as employees Adapt treated more favorably than herself. (R. 42, Pl.'s Resp. to Def.'s Facts ¶ 37.) Although neither party specifically alleges the following in their statements of facts, it is clear from both parties' statements of facts and legal briefs that Forliano, Pacilio, Paugh, and Bertagna had the following in common with Belour: they worked at Adapt's Sheridan Shores site; were supervised by Belour's supervisor, Fruscione; and were subject to the same attendance policy and performance evaluations. (*See id.* ¶¶ 38-59 (acknowledging that verbal and written warnings to other employees came from Fruscione); R. 43, Def.'s Resp. to Pl.'s Facts ¶¶ 21-39 (acknowledging that employees were subject to same attendance policy); R. 38, Def.'s Mot. at 11, 13 (acknowledging that all four employees were MHPs).) In addition, all four employees were MHPs, although Forliano was promoted from MHP to Team Leader on December 14, 2004. (R. 43, Def.'s Resp. to Pl.'s Facts ¶ 24.)

## IV. Employee Attendance

The parties dispute the exact number of times Belour and other employees clocked in late during the period Belour worked at Adapt, from June 21, 2004 to when she was terminated on March 25, 2005, and the parties calculated the five employees' tardiness records using different time frames within the June 21, 2004 to March 25, 2005 time period. This Court has attempted to piece together the parties' various calculations to create the following table to display the approximate range of tardiness tallies which combines the timekeeping records of an Adapt Executive Assistant, Mabel Menard, Belour's calculations, and Adapt's calculations. (R. 38, Def.'s Facts at Ex. 10, Menard Aff.; R. 42, Pl.'s Resp. to Def.'s Facts ¶¶ 38-59; R. 43, Def.'s Resp. to Pl.'s Facts ¶¶ 13-19.) As the parties agree that Adapt's stated policy was not to count the number of tardies from June 21 to June 30, 2004, this Court has separated those dates from the remainder of Belour's employment at Adapt.

| Employee | No. of times 8 or more minutes late (6/21/04 - 6/30/04) | No. of times 8 or more minutes late (7/1/04 - 3/21/05) | No. of times less than 8 minutes late (6/21/04 - 6/30/04) | No. of times less than 8 minutes late (7/1/04 - 3/21/05) |
|---|---|---|---|---|
| | | (1) Menard; (2) Belour; (3) Adapt | | (1) Menard (2) Belour (3) Adapt |
| Belour | 2 | (1) $20^2$ (2) 22 (3) 24 | 3 | (1) 62 (2) 65 (3) 69 |
| Forliano[3] | 2 | (1) 17 (2) 16 (3) 18 | 2 | (1) 58 (2) 60 (3) 59 |
| Pacilio | 0 | (1) 15 (2) 20 (3) 14 | 2 | (1) 61 (2) 63 (3) 61 |
| Paugh | 1 | (1) 8 (2) 12 (3) 9 | 2 | (1) 67 (2) 71 (3) 72 |
| Bertagna | 0 | (1) 9 (2) 13 (3) 9 | 0 | (1) 45 (2) 43 (3) 45 |

---

[2] The parties dispute whether Belour's tardies on January 6 and 7, 2005 were excused by Fruscione due to the fact that Belour worked late on January 3, 2005. (R. 43, Def.'s Resp. to Pl.'s Facts ¶ 17.) If these tardies were not excused, the correct number would be 22, and not 20. In its reply brief, Adapt restates the fact by asserting that Belour was late for work eight minutes or more *at least* five times during her ninety-day extended probation. (R. 44, Def.'s Reply at 5.)

[3] Adapt promoted Forliano to a Team Leader position at Sheridan Shores on December 14, 2004. Due to her promotion, Adapt stopped counting her tardies after December 14, 2004. However, Forliano continued to be assigned a shift time, and she continued to clock in. Forliano's tardy summary reflects the times she clocked in late after December 14, 2004, even if they were not counted as official tardies. (R. 42, Pl.'s Resp. to Def.'s Facts ¶ 38.) Adapt contends that it does not track clock in times for its team leaders for tardiness purposes. (R. 43, Def.'s Resp. to Pl.'s Facts ¶ 24.)

7

## V. Employee Discipline

Based on these attendance and tardiness records, Adapt disciplined the four employees other than Belour as follows. Fruscione gave Forliano a verbal warning for excessive tardiness in October 2004. (R. 42, Pl.'s Resp. to Def.'s Facts ¶ 39.) On December 14, 2004, Forliano was promoted to "Team Leader." (R. 43, Def.'s Resp. to Pl.'s Facts ¶ 24.) She received a "3" (meets expectations) on her June 2005 performance evaluation for working as scheduled with rare tardiness. (*Id.* ¶ 23.) Forliano's evaluation did not mention any tardiness problem. (*Id.*)

Fruscione gave Pacilio a verbal warning due to his excessive tardiness in July 2004. (R. 42, Pl.'s Resp. to Def.'s Facts ¶ 42.) Fruscione also gave Pacilio a written warning at a follow-up meeting in September 2004 for his tardiness. (*Id.* ¶ 44.) At Pacilio's fifth annual performance evaluation in March 2005, however, Pacilio received a rating of "3" (meets expectations) for working as scheduled with rare absences and tardiness. (*Id.* ¶ 47.) This evaluation indicated that Pacilio had recently shown improvement in reducing his number of tardies, and the third listed goal on Pacilio's performance evaluation stated he should arrive on time and start work at his assigned time. (*Id.* ¶¶ 48, 50.) Nevertheless, in March 2005, Pacilio's review period was extended ninety days, and he received a rating of "3" at the extended period's conclusion. (*Id.* ¶¶ 52-53.) Furthermore, Pacilio had problems completing documentation on time. Pacilio's performance reviews in March 2002, March 2003, and April 2004 indicated he did not consistently complete documentation in a timely manner, or was otherwise deficient in the documentation's completion. (R. 43, Def.'s Resp. to Pl.'s Facts ¶¶ 28-30.) Pacilio received written warnings in September 2004 and November 2004 for deficient clinical

8

documentation. (*Id.* ¶¶ 31-33.) He received a rating of "2" (needs improvement) for documentation on his fifth annual performance evaluation in March 2005. (*Id.* ¶ 34.)

Paugh received a verbal warning from Fruscione for excessive tardiness in January 2005 (R. 42, Pl.'s Resp. to Def.'s Facts ¶ 56), and Fruscione gave Bertagna a verbal warning for excessive tardiness in April 2005. (*Id.* ¶ 59.) Adapt maintains that it was not a verbal warning, but an informal "reminder" to Bertagna to turn things around. (*Id.*)

## V. Adapt's African-American Employees

Adapt employed forty-eight employees at the Sheridan Shores site from January 1, 2001 through March 21, 2006. (R. 43, Def.'s Resp. to Pl.'s Facts ¶ 1.) During that time, Adapt fired three employees, including Belour, from Sheridan Shores. (*Id.* ¶ 2.) All three of these employees were African-American. (*Id.* ¶ 3.)

## LEGAL STANDARDS

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Weighing evidence and making credibility decisions are jury functions, and it is not appropriate for a judge to assume those functions when deciding a summary judgment motion. *Id.* at 255. Accordingly, we apply the summary judgment standard with special scrutiny to employment

discrimination cases, where issues of intent and credibility often are paramount. *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002). The Court must "construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in favor of that party." *King v. Preferred Tech. Group*, 166 F.3d 887, 890 (7th Cir. 1999). However, "[i]nferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004) (internal citations omitted).

## ANALYSIS

Belour brings her race discrimination claims under Title VII and 42 U.S.C. § 1981, which both prohibit employers from discriminating against their employees on the basis of race. *See Oates v. Discovery Zone*, 116 F.3d 1161, 1169 (7th Cir. 1997). Discrimination claims under both statutes are analyzed in the same manner, and this Court will thus analyze both claims together. *Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 338 (7th Cir. 2002). Belour bears the ultimate burden of proving that her employment was adversely affected by her race; she may sustain that burden with either direct or circumstantial evidence of discriminatory intent. *Id.* As Belour did not present any direct evidence of discrimination, this Court will analyze her claim under the indirect method, which requires plaintiffs to first establish a *prima facie* of race discrimination. *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case of race discrimination under Title VII and section 1981, a plaintiff must establish: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) she

was treated less favorably than similarly situated individuals who are not members of her protected class. *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005).

Under the *McDonnell Douglas* framework, once a *prima facie* case is established, a rebuttable presumption of employment discrimination is created, and the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions. *Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1994). If the employer satisfies that burden, the plaintiff must show that the articulated reasons were pretextual. *Id.* The burden of persuasion, however, remains with the plaintiff. *Malacara v. City of Madison*, 224 F.3d 727, 729 (7th Cir. 2000).

## I. *Prima Facie* Case

Belour alleged that Adapt discriminated against her by terminating her for excessive tardiness when other non-African American employees with similar attendance records were not terminated. It is not disputed that, as an African-American woman, Belour was a member of a protected class. The parties also do not dispute that Belour suffered an adverse employment action when Adapt terminated her employment on March 21, 2005. Furthermore, Adapt does not dispute that Belour was meeting its legitimate performance expectations in every area except for tardiness. Nevertheless, Adapt argues that Belour cannot establish a *prima facie* case of race discrimination because Belour did not meet Adapt's "works with rare instances of tardiness" performance expectation. (R. 38, Def.'s Br. at 6.) In addition, Adapt contends that Belour was not similarly situated to other employees because of how Belour "address[ed] her excessive tardiness." (*Id.* at 13.)

Belour admits that she was tardy on most of the occasions alleged by Adapt; however, she claims that she was disciplined more harshly than the non-African American rule breakers—Forliano, Pacilio, Paugh, and Bertagna. "When a plaintiff produces evidence sufficient to raise an inference that the employer applied its legitimate expectations in a disparate manner, the second and fourth prongs of *McDonnell Douglas* merge, allowing the plaintiff to establish a *prima facie* case by establishing that similarly situated employees were treated more favorably." *Grayson v. O'Neill*, 308 F.3d 808, 818 (7th Cir. 2002). In other words, "the legitimate expectations prong of the *prima facie* test is not necessary to the analysis, where the people judging the plaintiff's performance were the same people she accused of discriminating against her." *Curry v. Menard, Inc.*, 270 F.3d 473, 477 (7th Cir. 2001) (citing *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612 n.3 (7th Cir. 2001)).

Without determining the exact number of times each employee was tardy—which is a factual question best left to the jury—this Court finds that Belour has produced sufficient evidence to raise an inference that Adapt applied its legitimate expectations in a disparate manner. Adapt maintains that it treated its non-African American employees the same as it treated Belour: in accordance with their job description and Adapt's Attendance Punctuality policy. Adapt's MHP job description specified that employees were expected to work "as scheduled with rare absences and tardiness," and the Attendance Punctuality policy articulated that excessive tardiness may result in termination. However, Adapt admits that it had no objective policy in place for the number of tardies that would constitute "excessive tardiness," such as would warrant

12

termination. Indeed, the number of tardies are so close in number[4] that the discrepancy in the discipline against Belour—who was put on additional probation and ultimately terminated—and her four co-workers (one of whom was promoted, the others of whom received much better performance evaluations than Belour) raises the inference that Adapt applied its legitimate expectations in a disparate manner.[5]

Therefore, the second and fourth prongs of *McDonnell Douglas* merge, and Belour must show that Forliano, Pacilio, Paugh, and Bertagna were similarly situated to her. *Grayson*, 308 F.3d at 818; *Curry*, 270 F.3d at 478. To demonstrate that another employee is "similarly situated," a plaintiff must show that:

> [T]here is someone who is directly comparable to her in all material respects. [A] court must look at all relevant factors, the number of which depends on the context of the case. Such factors include whether the employees dealt with the same supervisor and were subject to the same standards . . . [and] had comparable experience, education and qualifications.

*Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (internal citations omitted).

As explained above, Belour identified four non-African American employees—Forliano, Pacilio, Paugh, and Bertagna—whom she claimed were similarly situated to her. Indeed, all four employees: worked at Adapt's Sheridan Shores site; were supervised by Belour's supervisor, Fruscione; and were subject to the same

---

[4] Although Paugh and Bertagna were tardy at about half the rate of Belour, Forliano, and Pacilio, Paugh and Bertagna were still late a significant number of times such that this Court will not determine as a matter of law that Paugh and Bertagna were not similarly situated, given that Adapt did not have a clear rule of the number of tardies that would lead to disciplinary action.

[5] In addition, while Adapt also argues that the other four employees "addressed their excessive tardiness" in a manner different than Belour, (R. 38, Def.'s Br. at 13), the parties' pleadings show that there is an issue of fact as to whether the employees differently "addressed their excessive tardiness"—i.e., improved—sufficiently to justify the wide range in disciplinary action taken by Adapt.

attendance policy and performance evaluations. In addition, all four employees were MHPs, although Forliano was promoted from MHP to Team Leader on December 14, 2004. While Forliano, Pacilio, Paugh, and Bertagna worked at Adapt different lengths of time than Belour, the similarities are sufficient to satisfy the Seventh Circuit's test for similarly situated employees. *Id.* Thus, Belour has established her *prima facie* case.

## II. Pretext

Since Belour established a *prima facie* case of racial discrimination, Adapt bears the burden of "articulat[ing] a legitimate, nondiscriminatory reason" for its decision to terminate Belour. *Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005). If Adapt cannot articulate such a reason, or if Belour can show that Adapt's reason is pretextual, then this Court must deny summary judgment. *Id.* "A plaintiff shows that a reason is pretextual 'directly by persuading the court that a discriminatory reason more likely motivated the [defendants] or indirectly by showing that the [defendants'] proffered explanation is unworthy of credence.'" *Id.* (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). Pretext in this context does not mean a mistake; rather, it means "a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995).

Adapt's proffered explanation for Belour's termination is "excessive tardiness"; however, Adapt does not have a clear definition for "excessive tardiness," and Adapt's written policies conflict with its ezLaborManager timekeeping program, which conflicts with Adapt's own supervisors' understanding of tardiness. While the ezLaborManager program tracked time by quarter-hour increments, Adapt's supervisors testified that employees were considered "officially tardy" when one minute late to work.

14

Nevertheless, the supervisors maintained that employees were not disciplined until clocking in eight or more minutes late, even though Adapt's written attendance policies do not delineate between actionable and non-actionable tardiness. Furthermore, in its briefs and in the testimony of its supervisors, Adapt repeatedly refers to instances of employee tardiness both greater than and less than eight minutes even though only tardies of eight or more minutes were supposed to be subject to disciplinary action. All of this evidence raises the inference that Adapt's explanation of Belour's termination was pretextual.

In addition, Belour presented additional evidence supporting an inference of pretext in Adapt's explanation for her termination. Of the forty-eight employees working at the Sheridan Shores site from January 1, 2001 through March 21, 2006, only three were terminated. (Def.'s Resp. to Pl.'s Facts P 1.) All three of these employees were African-American. (*Id.*) This fact alone suggests that Adapt's explanation for Belour's termination is disingenuous. Therefore, Belour has raised an issue of material fact that Adapt's reason for her termination was pretextual.

## CONCLUSION

Drawing all reasonable inferences in favor of Belour, the Court concludes that she has established genuine issues of material fact requiring resolution at a trial, and Adapt's motion for summary judgment is denied. The evidence presented leaves this Court with many questions about the origins of Adapt's eight-minute tardy rule and the discharge of only African-American employees from Adapt's Sheridan Shores site since 2001. This Court encourages the parties to exhaust all settlement possibilities in light of this opinion. A status hearing will be held on November 8, 2006, at 9:45 a.m. for the express purpose of setting a firm trial date.

Entered: _____
**Judge Ruben Castillo**
**United States District Court**

**Dated: November 1, 2006**